**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re: Raymond L. Forrestal,            BK No: 15-10057
       Debtor                                                                              Chapter 13

---

**MEMORANDUM SUPPLEMENT TO ORDER**
**GRANTING MOTION FOR *IN REM* RELIEF FROM STAY**
**(this relates to Doc. ## 9, 26)**

This memorandum sets forth the Court's findings of fact and conclusions of law which serve as the basis for the entry of the Order (Doc. #26) granting the Motion of Coventry Credit Union (the "Credit Union") for *In Rem* Relief from Stay (the "Motion," Doc. #9) pursuant to § 362(d)(4) of the Bankruptcy Code,[1] to which no objections were filed.

Findings of Fact

These findings of fact are based on the uncontroverted allegations in the Motion and on the Court's own review of its docket.[2] Debtor Raymond L. Forrestal (the "Debtor") and Karen M. Forrestal ("Mrs. Forrestal") filed a voluntary chapter 7 bankruptcy petition in this Court on June 25, 2012 (the "First Case"). At that time the Debtor and Mrs. Forrestal owned property located at 26 Osprey Drive, Coventry, Rhode Island (the "Property"). A foreclosure sale of the Property was scheduled the same day as the petition date but did not take place as a result of the bankruptcy.

In the First Case, the Credit Union filed a motion for relief from the automatic stay under § 362(d), and in response the Debtor and Mrs. Forrestal filed a request to participate in this Court's Loss Mitigation program to commence Court-supervised negotiations with the Credit Union for a possible modification of the loan and mortgage. *See* R.I. LBR App. IX. Eventually, the Credit Union offered a conditional loan modification, resulting in the Court deeming Loss

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "Chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37 ("BAPCPA").

[2] The Court may take judicial notice of its docket. *See In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

Mitigation successfully completed, but the modification was subject to the Debtor and Mrs. Forrestal providing certain financial documents, which they never provided. Thus, a loan modification never was entered into. The First Case closed on October 18, 2013, without the Debtor and Mrs. Forrestal receiving a discharge because they failed to file the required certification of completion of a financial management instructional course. *See* § 727(a)(11). Thereafter the Credit Union scheduled a foreclosure sale of the Property for June 10, 2014. The day before such scheduled sale, June 9, 2014, the Debtor and Mrs. Forrestal filed a second voluntary chapter 7 bankruptcy petition (the "Second Case"), and the foreclosure sale was again canceled. According to the Debtor and Mrs. Forrestal's bankruptcy schedules filed in the Second Case, they intended to again pursue negotiations under the Loss Mitigation program, however, no loss mitigation request was ever filed. On August 5, 2014, the Credit Union filed a motion to determine that the automatic stay was no longer in effect pursuant to § 362(c)(A); the Debtor and Mrs. Forrestal did not respond to that motion and it was granted on September 17, 2014. On September 12, 2014, the Debtor and Mrs. Forrestal received a discharge of their debts and the case was closed on October 2, 2014.

    Its lien against the Property remaining unaffected by the prior discharge of the Debtor and Mrs. Forrestal, the Credit Union again attempted to foreclosure against the Property, scheduling for the third time a foreclosure sale for January 13, 2015. This time only the Debtor filed another bankruptcy petition on January 12, 2015, the day before the scheduled sale (the "Present Case"). As of the filing of the Present Case, the monthly payments under the Credit Union's loan to the Debtor are outstanding from January 2012 through January 2015 for a total arrearage, including principal and interest, of $63,544.17; the total balance due through January 2015 is $381,212.96, plus accruing interest. Based upon these multiple filings which have repeatedly prevented the

Credit Union from foreclosing upon its lien against the Property, it now seeks *in rem* relief from the automatic stay under § 362(d)(4).

## Analysis

To be entitled to the relief it seeks, the Credit Union has the burden of establishing that the Debtor's filing of the Present Case was part of a "scheme to delay, hinder or defraud creditors that involved . . . multiple bankruptcy filings affecting" the Property. *See In re Lee*, 467 B.R. 906, 920 (B.A.P. 6th Cir. 2012) (quoting *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009)). Thus, it must establish (1) that the Debtor engaged in a scheme, (2) to delay, hinder, or defraud creditors, (3) which involved multiple filings affecting the Property. *See In re The Action Team, LLC*, Bankr. LEXIS 1854, *5 (Bankr. D.S.C. April 25, 2012); *In re Taal*, 520 B.R. 370, 377-78 (Bankr. D.N.H. 2014).

As the Credit Union points out, the Present Case is the Debtor's third bankruptcy case filed on the eve of a scheduled foreclosure sale of the Property that has frustrated the Credit Union's exercise of its rights under its loan agreement and mortgage against the Property. Such filings are clear indicia of the very scheme § 362(d)(4) is intended to stop—"an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral." *In re Henderson*, 395 B.R. 893, 901 (Bankr. D.S.C. 2008) (citing *In re Price*, 304 B.R. 769, 773 (Bankr. N.D. Ohio 2004)); *see also In re Blair*, 2009 WL 5203738 *4 (Bankr. E.D.N.Y. 2009) (stating that "the mere timing and filing of several bankruptcy cases is an adequate basis" to infer a scheme to hinder, delay, or defraud creditors).

In light of the multiple filings by the Debtor and Mrs. Forrestal recited above, and the continued accrual of an increasing debt arrearage, the Credit Union requests that the Court enter

an order providing it *in rem* relief from the stay with respect to the Property. Additionally, for cause it requests that such lifting of the stay be immediately effective and the 14-day delay of stay relief under Bankruptcy Rule 4001(a)(3) be waived. The effect of granting such *in rem* relief pursuant to § 362(d)(4) is to render the automatic stay under § 362(a) inapplicable with regard to the Property in any bankruptcy case filed not later than two years after the entry of the order for relief. Having found cause, the Court issued its *in rem* stay relief order on February 6, 2015. *See* Doc. #26.

The Present Case is filed under chapter 13. The Credit Union in its Motion argues that the Debtor is "presumably going to attempt [] a 'cure and maintain' [plan] or request loss mitigation." In fact, less than one month after the filing of the Present Case, but only after the Credit Union filed the instant Motion, the Debtor filed a motion to dismiss the case, stating that "he is unable to obtain a loan modification on his home mortgage, nor is he able to cure the arrearage through a Chapter 13 Plan. The purpose of the filing was to save his house, and he is not eligible for a discharge." *See* Debtor's Motion to Dismiss, Doc. #25. Therefore, the Debtor admits the Present Case was filed "to save his house," but he also admits that he is unable to proceed with a feasible restructuring of the mortgage indebtedness through either a loan modification or a confirmable plan. These financial hurdles must have been known to the Debtor before filing the Present Case; therefore, the only conceivable purpose for the filing was to delay and hinder the scheduled January 13, 2015 foreclosure sale. That, combined with the Debtor's prior bankruptcy filings just prior to scheduled foreclosure sales and the Debtor's previous failures to constructively participate in the Loss Mitigation process, is strong evidence of the Debtor's scheme to delay or hinder the Credit Union within the ambit of the provisions of § 362(d)(4). The Credit Union has satisfied its burden to establish its entitlement to *in rem* relief from the automatic stay. *See In re*

*Briggs*, 2012 Bankr. LEXIS 4120, 11-12 (Bankr. N.D. Ill. Aug. 30, 2012) (stating that the creditor need not prove fraud on the part of the debtor, only an intent to delay or hinder the creditor from moving to foreclose its lien against an asset of the debtor).

Date: February 10, 2015

By the Court,

*Diane Finkle*

Diane Finkle
U.S. Bankruptcy Judge